UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 7:19-CV-17-EBA

BRANDY BAKER,                                                             PLAINTIFFS,

V.             **MEMORANDUM OPINION AND ORDER**

ROCKY L. CHRISTY,
WESTFIELD INSURANCE COMPANY,                        DEFENDANTS.

*** *** *** ***

This matter comes before the Court on Defendant Westfield Insurance Company's Motion for Summary Judgment, asserting that Brandy Baker is not entitled to underinsured motorist coverage under Westfield's policy. [R. 39]. Baker filed her response and Westfield replied. [R. 49, 52]. The issues are now ripe for review. For the following reasons, the Court **GRANTS** Westfield's motion.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The essential facts in this matter are not disputed. This case arises from an automobile collision with a pedestrian that occurred on August 17, 2018 in Isom, Kentucky along a four-lane highway. On that date, Baker was struck by the alleged tortfeasor's vehicle, Defendant Rocky L. Christy. Prior to the accident, Baker exited her vehicle on the northbound shoulder of Kentucky Highway 15 and walked across the four-lane highway, traveling southbound. Although it is unclear Baker's reason for exiting her vehicle due to her memory loss from the accident, it appeared that she was attempting to retrieve something from the road. Soon after she entered the highway to retrieve the unknown object, Baker began crossing the highway again to walk back to her parked vehicle. At this point, Christy's vehicle struck Baker as she was crossing the highway. It was never determined by the parties what object Baker was attempting to retrieve from the highway.

At the time of the accident, Baker was employed as a home health nurse by Whitesburg Appalachian Regional Healthcare, Inc. ("Appalachian Regional Healthcare"). As part of her employment, Baker was permitted to drive a company vehicle to complete home visits and personal errands. Prior to the accident, Baker completed two home visits. Westfield insured the vehicle that was issued and used by Baker on the date of her accident.

On January 14, 2019, Baker filed suit in Letcher Circuit Court against both Christy and Westfield. [R. 1-1]. On February 8, 2019, Westfield timely removed this case to the United States District Court for the Eastern District of Kentucky at Pikeville. [R. 1-2]. Following the consent of the parties, this case was assigned to this Court by the District Court. [R. 11]. Baker seeks coverage under Westfield's underinsured motorist insurance coverage asserting that Christy was underinsured at the time of the accident. [R. 1-1 at 9]. Westfield now moves pursuant to FED. R. CIV. P. 56 and asks this Court to grant summary judgment, alleging that Baker is not covered under the terms of its policy. [R. 39].

## II. SUMMARY JUDGMENT STANDARD

Kentucky substantive law applies to Baker's UIM claim and the interpretation of Westfield's policy, but federal law dictates the summary judgment standard. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Accordingly, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Such a motion then "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial." *Id.* at 324 (internal quotation marks omitted). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24. To avoid summary judgment, the non-movant must come forward with evidence on which a jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The following factors bear consideration by a court when entertaining a motion for summary judgment:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). "[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 251). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In such a case, summary judgment is warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex,* 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

### III. DISCUSSION

The issues raised by Westfield in its motion for summary judgment are governed by the principles of contract interpretation and is a question of law for this Court to decide. *Kemper Nat.*

*Ins. Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002); *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006). Thus, this case turns on whether Baker's accident is covered under Westfield's underinsured motorist insurance policy since she was outside her vehicle at the time of the accident. First, Kentucky law provides an expansive definition of "occupying" a vehicle under a four-factor test, which looks at (1) the causal relationship between the injury and use of the vehicle, (2) the distance between the injury and vehicle, (3) the purpose the injured party was outside the vehicle, and (4) whether the injured party's purpose for being out of the vehicle was essential to the use of the vehicle. *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 168 (Ky. 1992). Second, when Courts construe a contract, its "primary objective is to ascertain and to effectuate the intention of the parties to the contract from the contract itself." *Logan Fabricom, Inc. v. AOP Partnership LLP*, 2006 WL 3759412 at *2 (Ky. Ct. App. 2006). "[I]n the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). Third, a party is broadly protected as a first-class insured, regardless of their location at the time of the injury, when the party is named as the insured or paid for the protection. *Ohio Cas. Ins. Co. v. Stanfield*, 581 S.W.2d 555, 557 (Ky. 1979). All other persons are second-class insureds, meaning they are confined to damages sustained while occupying the vehicle. *Id.*

The parties contest the applicability of several portions of the policy agreement. Westfield contends that Baker cannot establish that she was "occupying" the vehicle at the time of the accident. [R. 39-1]. Baker argues that she was occupying the vehicle at the time, but even if this Court were to find that she did not, she overcomes Westfield's Motion for Summary Judgment

because she is covered as a pedestrian under other provisions of the policy as a first-class insured. [R. 48 at 473-74]. Westfield contends that Baker's latter arguments are unwarranted as misapplications of the law and the policy agreement. [R. 52 at 583-84].

### A. Occupying the Vehicle Standard

The first issue turns on whether Baker was "occupying" her vehicle when she was outside the vehicle attempting to retrieve an unknown object. Since Appalachian Regional Healthcare is a corporation, the policy defines the insured as:

> a. Anyone "occupying" a covered "auto" or temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
> b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

[R. 39-1 at 114; R. 48-3 at 543]. The policy defines the term "occupying" as someone "in, upon, getting in, on, out or off." [R. 39-5]. Although Baker clearly does not fall under this definition because she was away from the vehicle at the time of the accident, Kentucky courts expanded the definition of "occupying" for courts when analyzing uninsured and underinsured motorist insurance policies. *See McKinney*, 831 S.W.2d 164 (holding that the plaintiff was "occupying" her vehicle when she was struck and killed after she exited her stalled vehicle to warn oncoming traffic of her stalled vehicle in the roadway). To reach its holding, the Kentucky Supreme Court created a conjunctive four-factor test, stating that a person still occupies their vehicle for purposes of underinsured motorist insurance if: (1) there is a causal relationship between his injury and the use of the vehicle; (2) the injured party was in reasonably close geographic proximity to her vehicle at the time of her injury; (3) the injured party was "vehicle oriented rather than highway or sidewalk oriented at the time;" and (4) the injured party was engaged in a transaction essential to the use of the vehicle at the time of the injury. *Id.* at 168.

Westfield contends that none of the four factors are present because: (1) there was no causal connection between Baker's injury and her use of the vehicle because nothing indicates she left her vehicle for a connected purpose; (2) Baker was not close to her vehicle when Christy's vehicle struck her; (3) Baker's purpose for exiting was not vehicle oriented because she was not entering or exiting the vehicle or attempting to service it; and (4) Baker's transaction was not essential her using the vehicle because she left her vehicle for a completely unrelated reason. [R. 39-1, 52]. Baker contends conversely that since the Kentucky Supreme Court expanded the definition of occupying the vehicle in *McKinney*, there are material issues of fact in dispute because her departure from her work vehicle was temporary and she was close in proximity when the accident occurred. [R. 48].

Baker does not establish that she was occupying her vehicle at the time of the accident under the four factors. Baker merely contends that like *McKinney*, she was only "temporarily" out of her vehicle. [R. 48 at 475]. However, the overriding factor is not that she would have ultimately returned to the vehicle soon, but rather the reason for leaving the car was connected to her vehicle. *See Gill v. Specialty Nat. Ins. Co.*, 2006 WL 658900 (Ky. Ct. App. 2006) (holding that the plaintiff did not occupy the vehicle because he was not entering or exiting the vehicle or attempt to service or secure it, but rather conducted police work in connection to his employment). As Baker establishes, only the second factor in this case can be considered a close call, but that is not enough to overcome Westfield's Motion. *See e.g., Greenwich Ins. Co. v. Hall*, 2012 WL 5868915 (E.D.KY 2012) (holding that the insurance company's motion for summary judgment must be granted because while some factors were close calls, plaintiff could not meet the fourth factor).

First, Baker does not present facts to show that there is a causal relationship between her injury and the use of the vehicle. *McKinney*, 831 S.W.2d at 168. Both parties agree that it is unclear

the reason Baker left her vehicle due to her loss of memory. [R. 39-1 at 110; R. 48 at 470]. Thus, unlike *McKinney* where the plaintiff exited her vehicle to warn oncoming traffic of her stalled vehicle, Baker does not link her injury to the use of her vehicle. *McKinney*, 831 S.W.2d at 164. In other words, merely contesting that neither Christy nor Trooper Burton could identify the reason for Baker exiting her vehicle is insufficient to show that her reason for exiting was connected to her vehicle. [R. 48 at 470].

Second, Westfield contends that Baker did not present evidence that she was close in geographic proximity to her vehicle. [R. 39-1 at 117]. However, Baker established that Trooper Burton estimated in his deposition that Baker was approximately eight to ten feet away from her vehicle when she was struck by Christy's vehicle. [R. 48 at 477; R. 48-1 at 502]. In *McKinney*, the Kentucky Supreme Court found that the plaintiff was in close geographical proximity when she was between 130 and 200 feet away from the vehicle that struck her. 831 S.W.2d at 165. Thus, in a light most favorable to Baker, she has presents a question of fact which demonstrates that a reasonable jury could find that she met the second factor.

Third, Baker does not direct the court to evidence that she was vehicle oriented rather than highway oriented at the time of the accident. *McKinney*, 831 S.W.2d at 168. Westfield contends that Baker did not establish that she was outside her vehicle to engage in some function related to her vehicle. [R. 52 at 593]. Again, Baker presents no conflicting facts or evidence to overcome the possibility that she was highway oriented instead of vehicle oriented when she attempted to retrieve an unknown object from the roadway before she was struck by Christy's vehicle. Westfield stated that Baker was "road-oriented" because the circumstances outside her car did not point to anything being wrong with her vehicle. [R. 39-1 at 117; R. 52 at 592-93]. According to Westfield,

the flashers on the vehicle were not on, the hood was not open, and nothing was found that would suggest that the vehicle was disabled. [*Id.*]

Fourth, Baker presents no proof that her transaction was essential her using the vehicle. *McKinney*, 831 S.W.2d at 168. Westfield contends that Baker left her vehicle for a completely unrelated reason and Baker presents no evidence to establish that her reason for being outside the vehicle was essential to her use. [R. 39-1 at 116; R. 48]. Baker's contention that she merely left her vehicle for a temporary amount of time is insufficient to establish that she was engaged in an act essential to the operation of her vehicle. [R. 48 at 476]. Thus, this case is more analogous to *Gill* where the plaintiff was directing traffic in relation to his job as a police officer and not in connection to his vehicle like in *McKinney*. In other words, Baker does not establish that her reason for leaving her vehicle was to retrieve something from her vehicle or to warn others of her vehicle trouble.

In sum, Baker fails establish that she "was not a pedestrian out for a stroll and her presence at the point of impact was directly caused and necessitated by the disability of the insured vehicle." *McKinney*, 831 S.W2d at 167. Instead, Baker merely contends that she was close to her vehicle when the accident occurred and just temporarily out of her vehicle. [R. 48 at 477-78]. The Court is under no obligation to search the record to establish a genuine issue of material fact. *Davis v. Cotting Carriers*, 102 F. App'x. 938, 939 (6th Cir. 2004). Rather, the Court "may rely upon the facts presented and designated by" the defendant. *Id.* Therefore, having taken the facts in the light most favorable to Baker, the Court finds that she has failed to demonstrate that a reasonable jury could return a verdict in her favor that she was "occupying" the vehicle at the time of her injury, as contemplated by the language of the insurance policy or Kentucky law.

### B. Broadened Coverage Under Other Provisions of the Policy

The issue presented by Baker in her Response is whether the policy unambiguously provides for extended coverage for underinsured motorist coverage for her as a pedestrian. Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written. *Heaven Hill Distilleries, Inc.*, 82 S.W.3d at 873 (citing *American National Bank and Trust Co. v. Hartford Accident and Indemnity Co.*, 442 F.2d 995, 999 (6th Cir. 1971) (stating "under Kentucky law[,] unambiguous and clearly drafted exclusions which are not unreasonable are enforceable")). A court's "primary objective" when construing a contract "is to ascertain and to effectuate the intention of the parties to the contract from the contract itself." *Logan Fabricom, Inc.*, 2006 WL 3759412 at *2.

Baker asserted in her Response that she did not have to be occupying the vehicle at the time of the accident because under the plain language of other provisions of the policy she is covered as a "pedestrian." [R. 48 at 481]. Westfield contends that Baker's citation to other portions of the liability coverage are irrelevant because it does not pertain to the coverage under the underinsured motorist coverage. [R. 52]. Moreover, Westfield asserts that the Drive Other Car Coverage endorsement does not apply to Baker because the plain language of the policy does not name her as a covered individual. [*Id.*]

Again, the general underinsured motorist coverage defines an insured as "[a]nyone 'occupying' a covered 'auto'." [R. 39-1 at 114; R. 48-3 at 543]. However, the Drive Other Car Coverage – Broadened Coverage For Named Individuals provision of the policy expands the definition of an insured. The Drive Other Car provision provides in section C the following definition to "Who is An Insured:"

> Any individual named in the Schedule and his or her "family members" are "insureds" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:
> Any "auto" owned by that individual or by any "family member."

[R. 48-3 at 537; R. 52-1]. The Additional Coverages and Endorsements Schedule provides that "Executive Officers and Spouse/members of the person's household" are the named individuals to receive broader underinsured motorist coverage under the Drive Other Car provision. [R. 52-2].

Considering both provisions of the policy together, for Baker to receive broader coverage as a pedestrian for the underinsured motorist policy under section C of the Drive Other Car coverage, she must establish that she is specifically identified in the Additional Coverages and Endorsement Schedule. Baker does not establish this. Although Baker correctly establishes that the Drive Other Car Coverage permits coverage both to individuals occupying and pedestrians struck by any auto, she does point to anything in the record to establish that she is an executive officer or spouse, family member, or member of the executive officer's household. [R. 48 at 481-84]. The only evidence Baker established in her deposition testimony is that she is unmarried and lives with her thirteen-year-old son. [R. 52-3]. Thus, Baker did not establish that she is a named individual under the Additional Coverages and Endorsements Schedule.

To circumvent the issue of not being a named insured under the broader coverage, Baker asserts that Westfield's underinsured motorist policy contemplates all 1,450 employees being insured while they are pedestrians, citing the Declarations page under "Non-Ownership Liability." [R. 48 at 482]. Baker contends that "a reasonable interpretation of the plain language of the policy would be that Baker is entitled to coverage as an insured" based off Westfield contemplating that employees of Appalachian Regional Healthcare would be covered as pedestrians. [*Id.*] This argument fails for two reasons. First, the Non-Ownership Liability falls under the Business Auto Coverage, not the Driver Other Car Coverage, and the former section does not control the plain

language of the latter section. [R. 52-4]. Second, Baker's reliance on the reasonable expectation doctrine is inapplicable under the circumstances because she does not contend that the policy is ambiguous. *See True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) (stating a policy language will be construed as a layman would understand it when the terms are ambiguous). Instead, she asserts "Defendant Westfield must be held strictly accountable for the language it used when drafting its policy." [R. 48 at 483]. A term or provision in a contract is ambiguous when it is susceptible to two or more reasonable interpretations. *Id.* Baker does not establish this by merely citing two different policy sections. In other words, whether an individual is an "insured" for purposes of liability coverage while using a covered auto has no bearing on whether the employee is an insured for purposes of underinsured motorist coverage. Therefore, Baker has not established a triable issue of fact regarding her as a named insured or establishing an ambiguity in the policy to overcome Westfield's motion for summary judgment.

### C. First-Class Insured

Finally, the remaining issue is whether Baker is entitled to underinsured motorist coverage under Westfield's policy as a first-class insured. There are two types of insureds as it relates to underinsured motorist coverage: first-class insureds and second-class insureds. *Stanfield*, 581 S.W.2d at 557. A first-class insured is

> the named insured, the insured who bought and paid for the protection and who has a statutory right to reject uninsured motorist coverage, and the members of his family residing in the same household. The protections afforded the first class is broad. Insured of the first class are protected regardless of their location or activity from damages caused by injury inflicted by an uninsured motorist.

*Id.* The coverage afforded to second-class insured "is confined to damages from injury inflicted by an uninsured motorist while they are" occupying a covered automobile. *Id.*

Westfield asserts that Baker misapplies the law as it related to first and second-class insureds because Baker is not the named insured in the policy. [R. 52 at 587]. Consequently, Westfield claims that Baker is a second-class insured. [*Id.*] Baker contends that she is entitled to underinsured motorist coverage under the policy because she was a full-time employee with Appalachian Regional Healthcare and on the job when the accident occurred. [R. 48 at 474]. She further clarifies that the coverage is personal insurance that was taken from her paycheck and follows her as the insured. [R. 48 at 478]. Furthermore, Baker asserts that she cannot be considered a second-class insured because of the holding in *Philadelphia Indemnity Insurance Company v. Morris*, 990 S.W.2d 621 (Ky. 1999) and the plain language of the policy. [R. 48 at 481].

The policy language dictates who is a first-class insured and who is a second-class insured. According to Westfield's policy contract, "Appalachian Regional Healthcare, Inc." is the named insured for the policy. [R. 48-3]. The policy also listed 226 covered automobiles. [*Id.*] Pursuant to section A.1 of the Kentucky Underinsured Motorist Coverage in Westfield's policy, an insured party is covered under the following circumstances:

> When we pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".

[R. 39-1 at 113-14]. Furthermore, section B.2 adds the following definition to "Who is An Insured":

If the Named Insured is designated in the Declaration as:

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

> a. Anyone "occupying" a covered "auto" or temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
> b. Anyone for damage he or she is entitled to recover because of "bodily injury" sustained by another "insured".

[R. 48-3].

Baker unsuccessfully asserts that she is a first-class insured for two reasons. First, Baker asserts that pursuant to *Morris*, the terms of the underinsured motorist coverage would be illusory unless she was covered because Appalachian Regional Healthcare cannot be harmed in automobile accident. 990 S.W.2d 621; [R. 48 at 474-75]. The Kentucky Supreme Court established that where the named insured is a business, and the policy provides for first-class coverage for the business, Courts will construe the policy to identify individuals who are first-class insured to avoid illusory coverage. *Morris*, 990 S.W.2d at 626. "The doctrine of illusory coverage, like the doctrine of reasonable expectations, operates to qualify the general rule that courts will enforce an insurance contract as written." *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. Ct. App. 2012). Thus, the doctrine of illusory coverage prohibits following policy language that "essentially denies the insured most if not all of a promised benefit"; or put another way, is "[a] rule requiring an insurance policy to be interpreted so that it is not merely a delusion to the insured." *Id.* The doctrine of illusory coverage is best applied where part of the policy is specifically allocated to a type and that coverage turns out to be functionally nonexistent. *Id.*

Unlike *Morris*, Baker has not demonstrated how the language of policy only extends illusory first-class coverage to Appalachian Regional Healthcare. In *Morris*, the Kentucky Supreme Court did not permit a policy to have the named first-class insured as the business as well as anyone else occupying the vehicle. 990 S.W.2d at 626. The Court looked to KRS § 304.39-320 to determine that an insurance company is required to pay its own insured for uncompensated

damages to the extent of the underinsured motorist policy limits and not try to circumvent the statute by a contract provision. *Id.* at 626-27. The Court concluded that the plaintiff was entitled to underinsured motorist coverage because the policy was illusory with the first-class insured being designated as the corporation. *Id.*

Pursuant to section B.2 of the policy agreement, when the named insured is a corporation, like Appalachian Regional Healthcare, coverage extends only to anyone "occupying" the vehicle. The policy does not designate Appalachian Regional Healthcare as a first-class insured. There is no requirement under Kentucky law that an underinsured motorist policy provide first-class status. *Metzger v. Auto-Owners Ins. Co.*, 2018 WL 480524 at *6 (Ky. Ct. App. 2018). Moreover, the Court held in *Metzger* that since the business was not mentioned in the coverage section of the policy, the plaintiff could not establish case or statutory law that required her to be covered as a first-class insured. *Id.* Instead, the policy specifically requires that the named insured to be occupying the covered auto to be covered. Therefore, since Westfield's policy did not designate Appalachian Regional Healthcare as a first-class insured, the policy is not illusory.

Second, Baker contends that she is a first-class insured because she made payments to use the covered auto. [R. 48 at 481]. Baker asserts that "[p]resumably, the deductions from [her] paycheck[s] [were] used to pay for the cost of upkeep and insurance on the vehicle, which would mean that [she] actually did contribute toward the insurance policy premium each month." [*Id.*] In *Stanfield*, the Kentucky Supreme Court determined that the injured plaintiff was an insured of the second class as to his employer's policy because the plaintiff was merely the driver of a vehicle insured by the employer's policy. 581 S.W.2d at 559. Consequently, the plaintiff was precluded from stacking his policy to include underinsured motorist coverage because he was not a first-class insured. *Id.*

Baker likewise fails because she was not named as a first-class insured and was merely driving Appalachian Regional Healthcare's vehicle, which was covered under Westfield's policy. Thus, Baker provides no legal authority for her argument that she is a first-class insured and fails to come forward with evidence to demonstrate that the money taken from her paycheck is paying the insurance. Consequently, her argument is without merit. When faced with a motion for summary judgment, the respondent is charged with presenting "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street*, 886 F.2d at 1479 (internal quotations omitted). Merely asserting that money deducted from her paychecks "presumably" means Baker paid for the policy will not satisfy this burden. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Moore v. Phillip Morris Co., Inc.*, 8 F.3d 335, 343 (6th Cir. 1993). Therefore, Baker failed to establish that a factual issue exists for the jury to consider.

## IV.   CONCLUSION

Having considered the record and being advised,

**IT IS ORDERED** that Westfield's Motion for Summary Judgment [R. 39] is **GRANTED** and Baker's claim against Westfield is hereby **DISMISSED WITH PREJUDICE**.

This the 16th day of October, 2019.



Signed By:
Edward B. Atkins    *EBA*
United States Magistrate Judge